1  Glenn S. Bacal – 006812
2  Christine M. McAuliffe – 021226
   JENNINGS STROUSS & SALMON, P.L.C.
3  A Professional Limited Liability Company
4  The Collier Center, 11th Floor
   201 East Washington Street
5  Phoenix, Arizona 85004-2385
6  Telephone: (602) 262-5911
   Facsimile: (602) 495-2984
7  Email: gbacal@jsslaw.com
   Email: cmcauliffe@jsslaw.com
8

9  Mark N. Mutterperl
   Emily Frangos
10 FULBRIGHT & JAWORSKI L.L.P.
11 666 Fifth Avenue, 31st Floor
   New York, New York 10103-3198
12 Telephone: (212) 318-3000
13 Facsimile: (212) 318-3400
   Email: mmutterperl@fulbright.com
14 Email: efrangos@fulbright.com
15

16 Attorneys for Plaintiff
   The Procter & Gamble Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY, ) | |
| ) Plaintiff, ) | Civil Action No. CV'05 2595 PHX-EHC |
| ) v. ) | COMPLAINT |
| ) FRENCHINA LLC; BENJAMIN DREVET; ) IRIS HAN BIN WU; JOHN DOES AND/OR ) JANE DOES 1-50; and XYZ BUSINESSES, ) ) Defendants. ) ) | JURY TRIAL DEMANDED<br><br>FILED UNDER SEAL |

- 1 -

Plaintiff The Procter & Gamble Company ("Plaintiff" or "Procter & Gamble"), appearing through its undersigned counsel, alleges as follows based on first-hand knowledge and information and belief:

## THE PARTIES

1. Plaintiff Procter & Gamble is, and at all relevant times has been, a corporation organized and existing under the laws of the State of Ohio, with an office in Cincinnati, Ohio. Procter & Gamble is the owner of the intellectual property rights involved in this action.

2. Upon information and belief, Defendant Frenchina LLC ("Frenchina") is a Arizona corporation with its principal place of business located at 6673 W. Linda Lane, Chandler, Arizona, 85226.

3. Upon information and belief, defendant Benjamin Drevet is an individual residing at 9772 S. La Rosa Drive, Tempe, Arizona, 85284. Mr. Drevet is a co-owner of Frenchina and, upon information and belief, controls, manages and operates the activities of Frenchina.

4. Upon information and belief, defendant Iris Han Bin Wu is an individual residing at 9772 S. La Rosa Drive, Tempe, Arizona, 85284. Ms. Wu is a co-owner of Frenchina and, upon information and belief, controls, manages and operates the activities of Frenchina.

5. Upon information and belief, defendants also include various John Does and Jane Does who participated in the manufacture, sale or distribution of the counterfeit SK-II products and who are present and/or doing business in the State of Arizona and are subject to the jurisdiction of this Court. The identities of the various John Doe and Jane Doe defendants are not presently known. To the extent their identities become known to Procter & Gamble, those defendants will be joined and the acts in which they engaged will be pleaded in an amended complaint.

6. Upon information and belief, defendants also include various XYZ Businesses who participated in the manufacture, sale or distribution of the counterfeit

1  SK-II products and who, through their agents, servants and employees, are present and/or
2  doing business in the State of Arizona and are, or shall be, subject to the jurisdiction of
3  this Court. The identities of such defendants are not presently known. To the extent their
4  identities become known to Procter & Gamble, those defendants will be joined and the
5  acts in which they engaged will be pleaded in an amended complaint.

## JURISDICTION AND VENUE

7.  This is an action for trademark infringement, trademark counterfeiting, trademark dilution, unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1501, *et seq.*, as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (the "Lanham Act"), and for trademark and trade name infringement, unfair competition, dilution and deceptive acts and practices under the laws of the State of Arizona.

8.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b) and 15 U.S.C. §§ 1116 and 1121. This Court has supplemental jurisdiction over Procter & Gamble's state and common law claims pursuant to 28 U.S.C. § 1367.

9.  This Court has personal jurisdiction over defendants in that they do business or reside in the State of Arizona.

10.  Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1400(a) because defendants are entities or individuals residing in this judicial district, and because a substantial part of the events giving rise to Procter & Gamble's claims occurred in this judicial district.

## PROCTER & GAMBLE'S MARKS

11.  Procter & Gamble is a distributor of world-renowned high-quality consumer products, including its SK-II beauty and skin care products. Procter & Gamble adopted the SK-II brand for use with beauty and skin care products outside of the United States when it acquired the company Max Factor in 1991, and has continuously used the mark in foreign commerce. Procter & Gamble is the owner of registrations for the SK-II trademarks in 41 countries and the European Union.

12.  Since 1991, Procter & Gamble has spent more than $700 million on advertising and promoting SK-II worldwide and has achieved total worldwide sales in excess of $4 billion. People throughout the world recognize products bearing SK-II trademarks as containing high quality beauty and skin care products manufactured and distributed by Procter & Gamble.

13.  Procter & Gamble has developed an enormous amount of goodwill in the SK-II marks. These marks are well-known and respected by consumers worldwide. The SK-II marks represent Procter & Gamble's commitment to providing high quality beauty and skin care products. The SK-II marks are of inestimable value to Procter & Gamble.

14.  In 2004, Procter & Gamble introduced the SK-II brand in the United States through an exclusive distributorship at Saks Fifth Avenue department stores. Saks Fifth Avenue sells, among other products, the SK-II Facial Treatment Mask of $75.00. Procter & Gamble has spent millions of dollars on advertising in the United States, and has plans to greatly increase United States advertising, promotion and sales in the near future.

15. Procter & Gamble is the owner of, *inter alia*, the entire right, title and interest in and to the following federally registered marks and applications:

| UNITED STATES REGISTRATION/ SERIAL NUMBER | PROCTER & GAMBLE TRADEMARK | REGISTRATION/ FILING DATE |
|---|---|---|
| 2,883,114 | SK-II Whitening Source | September 7, 2004 |
| 2,902,277 | SK-II | November 9, 2004 |
| 78/510,630 | SK-II LXP Ultimate Revival Cream | November 3, 2004 |
| 78/205,273 | SK-II Body Designer | January 21, 2003 |
| 78/555,628 | SK-II Carton design | January 28, 2005 |
| 78/555,630 | SK-II Silver Rectangle design | January 28, 2005 |

Procter & Gamble expects the trademark applications to be granted in the near future.

16. Procter & Gamble has engaged and continues to engage in interstate activities designed to promote SK-II marks and the business and goodwill associated with each of the SK-II marks and to greatly expand the use and reputation of the SK-II marks, trade dress, logos and property in the State of Arizona and throughout the United States.

17. Plaintiff's products are sold within this district.

## DEFENDANTS AND THEIR ACTIVITIES

18. Upon information and belief, defendant Frenchina is a corporation owned and operated by defendants Drevet and Wu. Upon information and belief, defendants Frenchina, Drevet and Wu utilize the online auction site eBay.com to market and sell beauty and skincare products through the eBay.com seller name "frenchina."

19. On June 28, 2005, Procter & Gamble's investigator accessed eBay.com and located seller "frenchina" who was offering to sell SK-II Facial Treatment Masks. On

1  June 30, 2005, the investigator purchased one box of the SK-II Facial Treatment Masks from "frenchina" for $42.94.

20. On July 8, 2005, an investigator received a package from Frenchina LLC of 9920 S Rural Rd., Suite 108, PMB 126, Tempe, Arizona, 85284. The package contained a red box bearing the trademark SK-II. Inside the red box were six individual sachets of Facial Treatment Mask, each bearing the SK-II trademark.

21. Procter & Gamble determined through an examination of the primary packaging, secondary packaging, labeling and artwork that the products purchased from eBay.com seller "frenchina" are counterfeit.

22. In July, 2005, "frenchina" said it could supply wholesale quantities of SK-II Facial Treatment Masks at a price of $30.00 per box.

23. On July 13, 2005, an investigator accessed eBay.com and found "frenchina" offering for sale SK-II Eye Treatment Film, SK-II Facial Treatment Cleanser, SK-II Facial Treatment UV Cream, SK-II Face Treatment Repair, SK-II Face Lift Emulsion, SK-II Deep Whitening, SK-II Facial Treatment Masks, SK-II Advanced Protect Essence, SK-II Skin Refining Treatment, SK-II Facial Clear Solution, SK-II Wrinkle Treatment Masks and SK-II Facial Treatment Massage Cream.

24. On July 19, 2005, "frenchina" offered to sell SK-II Facial Treatment Massage Cream for $50.94, inclusive of shipping.

25. On July 20, 2005, "frenchina" offered to sell ten (10) boxes each of the SK-II Facial Treatment Masks and the SK-II Facial Whitening Masks for $30.00 per box. "Frenchina" offered to sell larger quantities in about one (1) month.

26. On July 21, 2005, "frenchina" offered to sell seventeen (17) boxes of the SK-II Facial Treatment Masks and seven (7) boxes of the SK-II Facial Whitening Masks.

27. On July 28, 2005, "frenchina" offered to sell to Procter & Gamble's investigator twenty-five (25) boxes each of the SK-II Facial Treatment Masks and the SK-II Facial Whitening Masks on a monthly basis.

28. On July 29, 2005, "frenchina" asked that the investigator send a money order in the amount of $150.00 as a deposit. "Frenchina" asked that the investigator send the deposit to 9920 S Rural Rd., Ste 108, PMB 126, Tempe, Arizona, 85284.

29. On August 3, 2005, the investigator emailed "frenchina" requesting bank account information so that he could wire the $150.00 deposit for twenty-five (25) SK-II Facial Treatment Masks and twenty-five (25) SK-II Facial Whitening Masks. The investigator received a reply email instructing him to wire the $150.00 deposit to the following bank account:

> Bank of America Ray Rural Banking Center
> 9900 S Rural Rd.
> Tempe, AZ 85284
> ABA #: 26009593
> Account #: 004657163804
> Beneficiary: Frenchina LLC

On August 8, 2005, the investigator wired the $150.00 deposit to this account.

30. Defendants, without authorization or license from Procter & Gamble, have knowingly and willfully used, reproduced and/or copied Procter & Gamble's SK-II marks, trade dress and products in connection with distributing, exporting, importing, selling and offering to sell SK-II cosmetic products in interstate commerce which are counterfeit and infringing copies of Procter & Gamble's SK-II products sold in connection with Procter & Gamble's SK-II marks and trade dress (the "Counterfeit Products").

31. Defendants have manufactured, have had manufactured or purchased their Counterfeit Products from a source or sources which are not authorized or licensed by Procter & Gamble to manufacture, offer for sale or sell products bearing Procter & Gamble's SK-II marks.

32. Defendants have knowingly advertised, offered for sale, sold and distributed their Counterfeit Products falsely bearing Procter & Gamble's SK-II marks in

1  interstate, intrastate and foreign commerce, including commerce in the State of Arizona
2  and in this judicial district.
3       33.    The use by defendants of Procter & Gamble's SK-II marks on or in
4  connection with the offering for sale, sale and distribution of Counterfeit Products is
5  likely to cause confusion, or to cause mistake or to deceive.
6       34.    The Counterfeit Products are not genuine SK-II products.  Procter &
7  Gamble did not manufacture, inspect or package the Counterfeit Products and did not
8  approve the Counterfeit Products for sale and/or distribution.  Based at least on the
9  character of the primary packaging and secondary packaging, the poor quality of the
10 labeling and artwork and the pricing, it is likely the defendants either knew the products
11 were counterfeit or, at a minimum, were willfully blind to the facts and failed to make
12 diligent inquiry.
13      35.    Defendants are not affiliated with or sponsored by Procter & Gamble and
14 have not been authorized by Procter & Gamble to sell SK-II products.; defendants are not
15 now and never have been authorized by Procter & Gamble to use or register any name or
16 mark that includes "SK-II."
17      36.    Defendants' unauthorized sales of counterfeit SK-II products have caused
18 and will continually cause irreparable harm to Procter & Gamble's reputation and defraud
19 the purchasing public.
20      37.    Defendants' unauthorized sales of counterfeit SK-II products enables
21 defendants to trade on and receive the benefit of the goodwill Procter & Gamble has
22 established in its SK-II marks with considerable labor and expense over many years, and
23 to gain acceptance of their goods and services not solely on defendants' own merit, but
24 on the reputation and goodwill of Procter & Gamble.
25      38.    Defendants' unauthorized sales of counterfeit SK-II products removes from
26 Procter & Gamble the ability to control the nature and quality of goods provided under
27 the SK-II brand and places the valuable reputation and goodwill of SK-II into the hands
28 of the defendants, over whom Procter & Gamble exerts no control.

25565934.2

- 8 -

39. Unless the acts of the defendants are permanently enjoined by this Court, such acts will continue to cause irreparable injury to Procter & Gamble and to the public for which there is no adequate remedy at law. Upon information and belief, defendants' acts have been deliberate, willful, intentional and in bad faith, with full knowledge and in conscious disregard of Procter & Gamble's rights in the SK-II marks and with an intent to trade on the goodwill Procter & Gamble has established in the SK-II marks.

40. Procter & Gamble has been and continues to be damaged by defendants' above-stated activities and conduct. Defendants have profited thereby and unless enjoined, Procter & Gamble's business, goodwill and reputation will suffer irreparable harm.

## CAUSES OF ACTION
## COUNT I
## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT
## 15 U.S.C. § 1114

41. Procter & Gamble repeats the allegations set forth above as if fully set forth herein.

42. The Procter & Gamble SK-II marks and the goodwill of the businesses associated with them in the United States and worldwide are of great and incalculable value, are distinctive and have become universally associated in the public mind with the products and services of the very highest quality and reputation finding their source in Procter & Gamble.

43. Upon information and belief, defendants have manufactured, distributed, offered for sale and/or sold their Counterfeit Products to the consuming public in direct competition with Procter & Gamble's sale of genuine SK-II products, in or affecting interstate commerce.

44. Such acts are in violation of 15 U.S.C. § 1114, in that the use of Procter & Gamble's SK-II marks in connection with defendants' goods and services in interstate commerce is likely to cause and is causing confusion, mistake and deception among the

1  general purchasing public as to the origin of Counterfeit Products, and is likely to deceive
2  the public into believing that the Counterfeit Products being sold by the defendants
3  originate from, are associated with or are otherwise authorized by Procter & Gamble, all
4  to the damage and detriment of SK-II's reputation, goodwill and sales.

## COUNT II
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## 15 U.S.C. § 1125(a)

45. Procter & Gamble repeats the allegations set forth above as if fully set forth herein.

46. The Counterfeit Products sold by defendants are intended to deceive the public to believe they are the SK-II products sold by Procter & Gamble; as such, defendants' use is likely to cause confusion to the general purchasing public.

47. By misappropriating and using Procter & Gamble's SK-II marks, defendants misrepresent the origin and source of their Counterfeit Products and create a likelihood of confusion by ultimate purchasers as to both the source and sponsorship of such merchandise.

48. Defendants' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale and/or sale of the Counterfeit Products creates express and implied misrepresentations that their Counterfeit Products were created, authorized or approved by Procter & Gamble, all to defendants' profit and Procter & Gamble's damage and injury.

49. Such acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that the use of Procter & Gamble's SK-II marks in connection with defendants' goods and services in interstate commerce constitutes a false designation of origin and unfair competition.

## COUNT III
## FEDERAL TRADEMARK DILUTION
## 15 U.S.C. § 1125(c)

50. Procter & Gamble repeats the allegations set forth above as if fully set forth herein.

51. Procter & Gamble's SK-II marks are "famous marks" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(1), and have been famous marks prior to defendants' conduct.

52. Defendants' manufacture, distribution, sale and/or offer for sale in commerce of the Counterfeit Products dilutes the distinctive quality of the SK-II marks and was done with the willful intent to trade on the SK-II reputation and to cause dilution of the SK-II marks.

53. Defendants' unauthorized use of Procter & Gamble's SK-II marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such manufacture, distribution, sale and/or offer for sale was not authorized or licensed by Procter & Gamble.

54. Defendants' acts are in knowing and willful violation of Procter & Gamble's rights under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

## COUNT IV
## TRADEMARK DILUTION
## ARIZONA CODE OF TRADE AND COMMERCE § 44-1448.01

55. Procter & Gamble repeats the allegations set forth above as if fully set forth herein.

56. The acts and conduct of defendants, as alleged above, constitute trademark dilution under the Arizona Code of Trade and Commerce, section 44-1448.01.

## COUNT V
## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
## ARIZONA CODE OF TRADE AND COMMERCE § 44-1451

57.     Procter & Gamble repeats the allegations set forth above as if fully set forth herein.

58.     The acts and conduct of defendants, as alleged above, constitute trademark infringement and unfair competition under the Arizona Code of Trade and Commerce, section 44-1451.

## COUNT VI
## COMMON LAW TRADEMARK INFRINGEMENT

59.     Procter & Gamble repeats the allegations set forth above as if fully set forth herein.

60.     Defendants' activities, as alleged above, constitute unfair methods of competition, common law trademark infringement, misappropriation of Procter & Gamble's goodwill in Arizona and other states where defendants' goods, services and/or commercial activities are being offered and/or advertised, including this district, and are a violation of the common law of Arizona.

WHEREFORE, Procter & Gamble prays for judgment as follows:

(a)     Defendants, their agents, servants, employees and all persons acting in concert or participating with defendants, be temporarily, preliminarily and permanently enjoined and restrained from:

(i)     using in any manner the Procter & Gamble SK-II marks, alone or in combination with any word or words which so resemble each said trademark as to be likely to cause confusion, deception, or mistake on or in connection with the advertising, offering for sale or sale or any product not Procter & Gamble's

product, or not authorized by Procter & Gamble to be sold in connection with each of the Procter & Gamble SK-II marks;

(ii) passing off, inducing or enabling others to sell or pass off any product as and for products produced by Procter & Gamble, not Procter & Gamble's, or not produced under the control and supervision of Procter & Gamble and approved by Procter & Gamble for sale under the SK-II marks;

(iii) committing any acts calculated to cause purchasers to believe that defendants' products are those sold under the control and supervision of Procter & Gamble, or sponsored or approved by, or connection with, or guaranteed by, or produced under the control and supervision of Procter & Gamble;

(iv) further diluting and infringing all Procter & Gamble SK-II marks and damaging Procter & Gamble's goodwill;

(v) otherwise unfairly competing with Procter & Gamble in the sale, offering for sale or distribution of SK-II products;

(vi) shipping, delivering, distributing, returning or otherwise disposing of, in any manner, products or inventory not manufactured by or for Procter & Gamble, nor authorized by Procter & Gamble to be sold or offered for sale, and which bear any of the SK-II marks;

(vii) using any reproduction, counterfeit, copy or colorable imitation of any of the SK-II marks in connection with the publicity, promotion, sale or advertising of counterfeit SK-II products manufactured, received, acquired, imported, shipped, purchased, sold, offered for sale or distributed by defendants bearing a copy or colorable imitation of any of the SK-II marks;

(viii) affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being SK-II products and from offering such goods in commerce;

(ix) destroying any records documenting the manufacture, sale or receipt of any counterfeit SK-II products; and

(x) assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referenced in subparagraphs (i) through (ix) above.

(b) Defendants be required to deliver to Procter & Gamble any and all products, guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional and other materials in the possession of defendants or under their control bearing any SK-II marks, or each of them, alone or in combination with any other words or used in connection with the advertising, offering for sale or sale of products which are not genuine Procter & Gamble SK-II products, or not made under the authorization and control of Procter & Gamble.

(c) Defendants be required to supply Procter & Gamble with a complete list of individuals or entities from whom they have purchased and to whom they have distributed and/or sold products falsely bearing Procter & Gamble's SK-II marks or products not authorized by Procter & Gamble to be sold in connection with each of said marks.

(d) Defendants be required to deliver to Procter & Gamble for destruction the entire inventory of said products bearing any of the aforesaid infringing trademarks.

(e) Defendants, within thirty (30) days after the entry and service on defendants of an injunction, be ordered to file with this Court and serve upon Procter & Gamble a written report under oath setting forth in detail the manner in which defendants have complied with this injunction.

(f) Procter & Gamble recover all damages it has sustained as a result of defendants' activities and that said damages be trebled.

(g) Procter & Gamble recover exemplary damages.

(h) Defendants account for and pay over to Procter & Gamble profits realized by defendants by reason of defendants' unlawful acts, increased as the Court finds to be just under the circumstances of this case.

(i) Procter & Gamble be awarded reasonable attorneys' fees and have such other and further relief as the Court may deem equitable including, but not limited to, any costs of this action and prejudgment and postjudgment interest.

(j) Procter & Gamble recover such other relief as this Court deems appropriate.

Dated: August 29, 2005

By: /s/ Christine M. McAuliffe
Glenn S. Bacal – 006812
Christine M. McAuliffe – 021226
JENNINGS STROUSS & SALMON, P.L.C.
A Professional Limited Liability Company
The Collier Center, 11th Floor
201 East Washington Street
Phoenix, Arizona 85004-2385
Telephone: (602) 262-5911
Facsimile: (602) 495-2984
Email: gbacal@jsslaw.com
Email: cmcauliffe@jsslaw.com

Mark N. Mutterperl
Emily Frangos
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue, 31st Floor
New York, New York 10103-3198
Telephone: (212) 318-3000
Facsimile: (212) 318-3400
Email: mmutterperl@fulbright.com
Email: efrangos@fulbright.com

Attorneys for Plaintiff
The Procter & Gamble Company